UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re High Sulfur Content Gasoline Products Liability Litigation | * CIVIL ACTION NO. MDL 1632 <br> "ALL CASES" <br> * <br> Section B <br> * Judge Ivan L.R. Lemelle <br> <br> * Magistrate Judge <br>    Karen Wells Roby <br> * |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**ORDER GRANTING PLAINTIFFS' MOTION FOR CERTIFICATION OF A SETTLEMENT CLASS AND FINDINGS OF FACT AND CONCLUSIONS OF LAW IN SUPPORT OF CERTIFICATION OF A SETTLEMENT CLASS**

Plaintiffs in the above-captioned litigation have moved pursuant to Federal Rule of Civil Procedure 23 for certification of a consumer class for settlement. The Court, having considered the record, including the relevant written submissions from the parties and the settlement documents, hereby grants Plaintiffs' motion for certification of a Settlement Class, as set forth in Plaintiffs' Motion for Certification of a Settlement Class and Supporting Memorandum of Law. Additionally, the Court makes the following findings of fact and conclusions of law in support of its certification of the Settlement Class.

**I.      General Litigation Background and Settlement.**

1.      This is a putative class action alleging that Defendants Shell Oil Company, Shell Oil Products Company, LLC, Motiva Enterprises, LLC, Saudi Refining, Inc., and Equilon Enterprises, LLC (collectively "Defendants") marketed and sold gasoline containing improper amounts of elemental sulfur and/or hydrogen sulfide, which allegedly resulted in damage to Plaintiffs' automobiles and other vehicles. Defendants' sale of the allegedly defective gasoline lasted over a period of weeks, beginning in May 2004, and occurred in a number of geographic

markets located in parts of Louisiana, Mississippi, Alabama, and Florida. Plaintiffs alleged that when Defendants sold the allegedly defective gasoline to consumers, they knew, or should have known, that it contained improper levels of elemental sulfur and/or hydrogen sulfide. Plaintiffs asserted they were damaged economically both when they purchased the gasoline, and when their vehicles were adversely affected by the use of the gasoline. *See generally*, Consolidated and Second Amended Class Action Complaint.

2. Numerous cases were filed and consolidated pursuant to MDL 1632 before this Court. Many of these cases were initially pled as putative class actions.

3. After more than a year of highly contested litigation, and several months of settlement negotiations conducted both between the litigants without a mediator and with a mediator, the Parties reached a proposed class settlement. The Class Settlement Agreement (submitted as part of the Parties' Joint Motion for Preliminary Approval of Class Settlement and Supporting Memorandum of Law) resolves all consumer claims arising from Defendants' sale of the allegedly defective gasoline at issue, save and except for bodily injury or property damage claims arising from a motor vehicle accident.

4. Defendants have denied, and continue to deny, the allegations contained in the Complaint. Upon learning of problems with some of the gasoline sold in the Southeastern United States beginning in May 2004, Motiva Enterprises LLC ("Motiva") instituted a compensation and voluntary repair program for damages caused by the gasoline to some customers' automobiles. Plaintiffs submitted, *inter alia*, that this compensation program alone was insufficient, and continued to press their legal claims in this Court.

5. In July 2005, a mediation was conducted with John W. Perry, Jr., and after multiple meetings and negotiations both in person and through telephonic communications, a

settlement was reached in principal—subject to Court approval. Under the terms of the settlement, Motiva will expand the voluntary repair program and pay or reimburse the Repair Expenses, Incidental Expenses, and General Damages (as those terms are defined and provisions are made for in the Class Settlement Agreement at 1.16, 1.17, and 1.27) of the Settlement Class members with an approved claim under the previous or new repair program for Repair Expenses who provide, *inter alia*, timely and properly-completed claim forms. *See* Class Settlement Agreement, at 9.2.1. and 9.2.9. General Damages includes all damages, other than Repair Expenses and Incidental Expenses, including items such as lost time, inconvenience, lost wages, annoyance, loss of use and mental anguish, but not including bodily injury or property damage arising from a motor vehicle accident. Motiva will establish a fund totaling $3.7 million for General Damages (damages other than Repair Expenses or Incidental Expenses as those terms are defined in the Class Settlement Agreement). *Id.* at 9.2.12. Any Settlement Class Member with an approved claim under the previous or new repair program for Repair Expenses may submit a claim for General Damages of one hundred and fifty dollars ($150). *Id.* As applicable, these Settlement Class Members may also claim actual lost wages up to three hundred dollars ($300) out of this General Damages settlement fund. *Id.* Also, Motiva will pay the sum of $50,000 to the *Cy Pres* Fund established by the Class Settlement Agreement, which, as explained below, may be increased. *Id.* at 9.2.14.

   6. All claims for lost wages and other General Damages are subject to a pro rata reduction in the event that the aggregate total claims for all General Damages exceed $3.7 million. *Id.* at 9.2.12. Should the above-described $3.7 million General Damages fund not be exhausted by Class Member claims, then the remaining proceeds shall be utilized as follows: (1) if the remaining balance is $50,000 or less it shall be contributed to the *Cy Pres* Fund; (2) if the

remaining balance is greater than $50,000, the sum of $50,000 shall be contributed to the *Cy Pres* Fund, and up to 50% of the net remaining balance of the Settlement Fund will be used to reimburse Defendants for the expenses associated with the notice and administration of the Settlement; the remainder shall be contributed to the *Cy Pres* Fund. *Id.* at 9.2.13. The parties recommend to the Court that those monies in the *Cy Pres* Fund be distributed to the American Red Cross for the benefit of victims of Hurricanes Katrina, Rita, and Wilma. *Id.* at 9.2.14.

7.  Finally, proposed attorneys' fees, costs, and expenses, and incentive awards, were negotiated by the parties separate and apart from the Class relief (that is, the fees will not reduce the recovery to the Class in any way) and were only negotiated after the other settlement terms were complete. The parties have agreed, subject to Court approval, that Defendants will pay Plaintiffs' up to $6.875 million for attorneys' fees, costs, and expenses, and $2,000 to each of the Settlement Class Representatives and $400 to each named plaintiff in each of the Actions as incentive awards, subject to Court approval (capped at $4,000 for any individual case). *Id.* at 9.3.1 and at 10.1.

8.  As is set out in the Court's Preliminary Approval Order, the Court believes that the proposed settlement is within the range of a fair, adequate and reasonable settlement for the absent class members and meets the applicable standards for preliminary approval under Rule 23(e). The Court will address final approval under Rule 23(e) of all of the terms of the proposed settlement following the presentation and submission of all evidence at the fairness hearing.

**II.    Definition of the Proposed Settlement Class.**

9.  The Court has certified the following plaintiff class for settlement purposes only:

> All persons who owned, operated, rented or leased any Vehicle that used the particular grades of gasoline manufactured by Motiva Enterprises LLC that were (i) purchased during the respective time

4

>periods during the Gasoline Purchase Period from the Designated Gas Stations, all of which are specified in more detail in <u>Exhibit A</u>, attached hereto and incorporated herein by reference, or (ii) delivered during the respective time periods during the Gasoline Purchase Period to the Designated Private Fleet Storage Facilities, all of which are specified in more detail in <u>Exhibit B</u>, attached hereto and incorporated herein by reference.

Exhibits A and B referenced in the definition above are attached to the Class Settlement Agreement, which is attached to the Preliminary Approval Order. The capitalized terms referenced in the definition have the meanings ascribed to them in the Settlement Agreement.

### III. The Proposed Settlement Class Meets the Class Certification Requirements of Rule 23(a) and (b).

10. Federal Rule of Civil Procedure 23(a) has four prerequisites to class certification:

(1) The class must be so numerous that joinder of all members is impracticable;

(2) There must be questions of law or fact common to the class;

(3) The claims of the representative parties must be typical of the claims of the class; and

(4) The representative parties must fairly and adequately protect the interests of the class.

Courts commonly refer to these prerequisites as: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. In addition to each of Rule 23(a)'s prerequisites, Rule 23 also requires that one of the provisions of its subsection (b) be satisfied. Here, Plaintiffs propose certification of the class pursuant to Rule 23(b)(3).

11. As an initial matter, resolution of Plaintiffs' settlement class certification motion is limited to ascertaining whether the certification and appointment of class counsel requirements of Rule 23 are satisfied. *See AmeriFirst Sec. Litig.*, 139 F.R.D. 423, 427 (S.D. Fla. 1991). Indeed, in the seminal case of *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974), the United

States Supreme Court emphasized that an inquiry pursuant to Rule 23 should not extend to the merits of a case:

> We find nothing in either the language or history of Rule 23 that gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action.

417 U.S. at 177. Accordingly, the question for the Court is solely whether Plaintiffs have met the requirements of Rule 23, not whether Plaintiffs could ultimately prevail on the merits. *See Cox v. American Cast Iron Pipe Co.*, 784 F.2d 1546, 1557 (11th Cir. 1986); *Miller v. Mackey Int'l, Inc.*, 452 F. 2d 424, 427 (5th Cir. 1971).

### A. Rule 23(a)(1) is Satisfied: The Class is Sufficiently Numerous Since Joinder of All Members of the Class is Impracticable.

12. Rule 23(a)(1) requires that the proposed class be so numerous that joinder of all members is impracticable. To demonstrate numerosity, "[P]laintiff need not allege the exact number and identity of the class members, but must only establish that joinder is impracticable through some evidence or reasonable estimate of the number of purported class members." *Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030, 1038 (5th Cir. 1981). The precise number of class members is unknown. Nevertheless, it is known that the claimants paid under Motiva's voluntary claims program are class members, and there have been approximately 53,000 vehicles repaired under this program, suggesting that this subgroup of class members likely exceeds 45,000 persons. Thus, the number of class members is at least in the tens of thousands, if not exceeding one hundred thousand. The Court concludes that the numerosity requirement of Rule 23(a)(1) has been met.

### B. Rule 23(a)(2) is Satisfied: There are Questions of Law and Fact Common to the Class.

13. Rule 23(a)(2) requires that there be "questions of law or fact common to the class." The commonality prerequisite, however, does not require that all factual and legal questions be common to all class members. Rather, the proper inquiry is "whether there exists at least one issue affecting all or a significant number of proposed class members." *Kreuzfeld A.G. v. Carnehammar*, 138 F.R.D. 594, 599 (S.D. Fla. 1991). "'A common nucleus of operative fact' is generally enough to satisfy the commonality requirement." *Garner v. Healy*, 184 F.R.D. 598, 601 (N.D.Ill. 1999) (certifying a class action brought pursuant to Illinois' consumer fraud statute) (citations omitted). "Indeed, courts have readily found a common nucleus of operative facts when the defendants are alleged to have directed standardized conduct toward the putative class members." *Id.*

14. Here, there are a number of common questions of fact and law raised by Plaintiffs' Complaint, including:

(a) Whether Defendants sold gasoline to the public during the class period that contained potentially harmful levels of elemental sulfur and/or hydrogen sulfide;

(b) Whether these levels of elemental sulfur and/or hydrogen sulfide in gasoline can cause damage to the Plaintiffs' and class members' vehicles' fuel gauge sensing units or other parts of their vehicles;

(c) What duties the Defendants had with respect to the refining of their gasoline they sold to the public and the levels of elemental sulfur and hydrogen sulfide contained therein, and did they breach those duties;

(d) Whether Defendants had a duty to warn Plaintiffs and the Class that their gasoline

contained the levels of elemental sulfur and/or other types of sulfur; and

(e) Whether Defendants failed to perform an adequate inspection and/or test of their gasoline prior to distributing it to the public.

15. The Court concludes that, at least in the current settlement context, the same legal and factual questions exist for each member of the Class with respect to these issues, and the resolution of these issues will resolve them for all Class Members. Therefore, the commonality prerequisite is satisfied.

### C. Rule 23(a)(3) is Satisfied: Plaintiffs' Claims are Typical of Those of the Proposed Class.

16. Rule 23(a)(3) requires that Plaintiffs' claims or defenses be typical of the claims or defenses of the proposed Class. This typicality requirement is satisfied where "there is a common nucleus of facts and potential legal remedies among all class members[.]" *Manual for Complex Litigation*, Fourth, § 21.132, p. 251, *citing Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998). The class representative and class members need not have identical factual and legal claims. Rather, the typicality requirement is satisfied if the class representatives show that their interests are aligned with the class members' interests and their claims arise from the same events and are premised on the same legal theories as the class members' claims. *See Hoxworth v. Blinder, Robinson & Co.*, 980 F.2d 912, 923 (3d Cir. 1992) ("Factual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the [absent] class members, and if it is based on the same legal theory."); *see also Singer v. AT&T Corp.*, 185 F.R.D. 681, 689 (S.D. Fla. 1998) ("Typicality turns solely on whether the plaintiff and the class have an interest in prevailing on similar claims. The typicality requirement does not demand factual homogeneity. Therefore, the

existence of factual differences does not defeat typicality."); *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983) (typicality "may be satisfied even if there are factual distinctions between the claims of the named plaintiffs and those of other class members").

17. Plaintiffs here allege a common course of improper conduct by Defendants regarding the marketing and sale of the concerned gasoline. The representative Plaintiffs are similar to the other customers who purchased the Motiva gasoline during the class period, and share common legal theories of recovery. Because Plaintiffs' claims "are based on injuries caused by conduct affecting the class as a whole," the Court concludes that their claims satisfy the typicality requirement.

### D. Rule 23(a)(4) is Satisfied: Plaintiffs Will Fairly and Adequately Represent the Interests of the Class.

18. Rule 23(a)(4)'s adequacy of representation prerequisite has two elements: (1) class counsel must possess the competence to undertake the particular litigation, and (2) plaintiffs, as class representatives, must not have interests antagonistic to the class members. *See, e.g., Joiner v. E&H Plastics Co.*, 1993 WL 565994 at *4 (N.D. Ill. 1993). The Court concludes that there is no conflict of interest between Plaintiffs and the Class Members they seek to represent. Plaintiffs' interests are aligned with those of the Class Members and they have vigorously litigated this matter on behalf of themselves and the absent Class Members. The Court concludes also that Plaintiffs' attorneys include highly experienced class action counsel who possess the requisite skill, ability and experience to represent the Class. Having retained experienced and skilled counsel, and possessing interests aligned with the proposed Class, Plaintiffs satisfy the adequacy of representation requirement.

19. The various Plaintiffs' lawyers involved in each of the cases in the MDL have worked together and formed a Plaintiffs' lawyer group and instituted a division of responsibility amongst themselves including the appointment of Co-Lead Class Counsel, Don Barrett and Ben Barnow. These arrangements have been previously reviewed and approved by the Court in its prior Amended Order of Assignment (Docket Entry No. 3, November 24, 2004). The Court has (i) observed the functioning of this plaintiff lawyer group in this case for more than a year, (ii) analyzed the division of class counsel responsibility under the Amended Order of Assignment, and (iii) assessed Plaintiffs' counsels' performance and qualifications under the standards set out in Rule 23(g). The Court concludes that the division of duties suggested by Plaintiffs' counsel, the appointment of Co-Lead Settlement Class Counsel set out in the Preliminary Approval Order, and the division of duties set out in the Amended Order of Assignment are in the best interests of the absent class members and meet the standards specified by Rules 23(a)(4) and 23(g)(1).

### IV. Plaintiffs' Proposed Class Satisfies Rule 23(b)(3).

20. According to Rule 23 (b), Fed. R. Civ. P.,

> An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:
>
> . . . .
>
> (3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy . . . .

Fed. R. Civ. P. 23(b)(3). The two basic requirements of Rule 23(b)(3) are generally referred to as predominance and superiority.

21. The Court's class certification order recognizes that the proposed plaintiff is being certified in the settlement context, and the Court has reviewed each of the applicable elements of

10

Rule 23(a) and 23(b) in that context. The U.S. Supreme Court noted in *Amchem Products, Inc. v. Windsor* that because a settlement class action obviates the need for a trial, the Court "need not inquire whether the case, if tried, would present intractable management problems." *Amchem*, 521 U.S. 591, 620 (1997). Thus, the Court does not decide the litigation management issues that would require analysis under Rule 23(b)(3) if this case were to be litigated through trial. *See also*, Manual for Complex Litigation, Fourth, at § 21.132 (2004).

### A. In the Settlement Context, Common Questions of Law and Fact Predominate Over Issues Affecting Only Individual Members of the Class.

22. "The standard to be applied in determining whether common questions predominate is ... whether common or individual questions will be the object of most of the efforts of the litigants and the court." *Sargent v. Genesco, Inc.*, 75 F.R.D. 79, 84 (M.D. Fla. 1977). "Rule 23(b)(3) does not require that all questions of law or fact be common; it only requires that the common questions predominate over individual questions." *Dura-Bilt Corp. v. Chase Manhattan Corp.*, 89 F.R.D. 87, 93 (S.D.N.Y. 1981) (emphasis added); *Amchem Products, Inc. v. Windsor*, 117 S.Ct. 2231, 2249-50 (197) ("The Rule 23(b)(3) predominance inquiry tests whether the proposed classes are sufficiently cohesive to warrant adjudication by representation . . . Predominance is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws."). *See generally* 4 H. Newberg, *Newberg on Class Actions*, §§ 4.21, 4.25 (1992).

23. As noted above, there is a common course of conduct by Defendants that is applicable to each Class Member, including:

(a) Whether Defendants sold gasoline to the public during the Gasoline Purchase Period that contained potentially harmful levels of elemental sulfur and/or hydrogen sulfide;

(b)     Whether these levels of elemental sulfur and/or hydrogen sulfide in gasoline can cause damage to the Plaintiffs' and class members' vehicles' fuel gauge sensing units or other parts of their vehicles;

(c)     What duties the Defendants had with respect to the refining of their gasoline they sold to the public and the levels of elemental sulfur and hydrogen sulfide contained therein, and did they breach those duties;

(d)     Whether Defendants had a duty to warn Plaintiffs and the Class that their gasoline contained the levels of elemental sulfur and/or other types of sulfur; and

(e)     Whether Defendants failed to perform an adequate inspection and/or test of their gasoline prior to distributing it to the public.

24.     The Court finds that resolution of these issues associated with Defendants' conduct are the key issues in the case and specifically Plaintiffs' causes of action (Louisiana Products Liability Act, redhibition, and unjust enrichment) predominate over factual and legal issues applicable to only individual class members. This is not a case where misrepresentations or varying oral communications to consumers are at issue, but rather, a legal attack on the concerned gasoline and on the uniform manner in which Defendants failed to disclose or adequately disclose to consumers the defect and its propensity to harm automobile parts.

Analysis of each cause of action asserted by Plaintiffs supports this conclusion.

### 1.     Louisiana's Products Liability Act

Plaintiffs seek recovery under Louisiana's Products Liability Act, La. Stat. §9:2800.51, *et. seq.* As noted above, the questions related to the alleged defective nature of the gasoline at issue are central to the case and are common to the class. In *West v. G&H*, the plaintiffs sued defendants under the Louisiana Products Liability Act, alleging that the insecticide-treated rice

12

seed sold to them, when used as directed and intended, damaged plaintiffs' crawfish harvest (crawfish is commonly farmed in conjunction with rice farming, using the same ponds for both products). *Id.* at 277-78. The trial court granted class certification, and was affirmed on appeal. *Id.* at 291-91. *See also Davis v. American Home Products*, 844 So. 2d 242, 263 (La. Cir. Ct. 2003). Plaintiffs' LPLA allegations here are similar, and the Court concludes that common questions predominate in the LPLA claims of the settlement class.

### 2. Redhibition

25. Plaintiffs also raise state law claims for relief under a redhibition theory. The courts of Louisiana have previously recognized that where a putative class asserts redhibition claims under Louisiana law, common issues of liability frequently predominate over any individual questions regarding particular class members. *See Mire v. Eatelcorp, Inc.*, 849 So. 2d 608 (La. Cir. Ct. 2003):

> According to the plaintiffs, the inquiry under a redhibition claim does not involve the buyer's subjective knowledge or reliance, but rather is an objective inquiry into the deficiency [of the product] and whether it diminishes the product's value or renders it so inconvenient that the reasonable buyer would not have purchased it had he known of the deficiency. We agree. Whether Eatel is liable in redhibition is the central issue and this issue is obviously common to all claimants. Under the facts of this case, we find no error in the trial court's finding that questions of law or fact common to the members of the entire class predominate over those affecting only individual members.

*Id.* at 613-14. *See also, infra, West v. G&H Seed Co.*, 832 So. 2d 274, 291 (La. Cir. Ct. 2002) (certifying class action against manufacturer and distributors of alleged defective seed under redhibition theory and products liability theory). The Court concludes that common issues predominate in the redhibition claims of the settlement class.

### 3. Unjust Enrichment

26. Finally, Plaintiffs assert that Defendants have been unjustly enriched at Plaintiffs' expense as a result their improper business activities. *See McCastle v. Rollins Environmental Services of Louisiana, Inc.*, 456 So. 2d 612, 619 (La. 1984) (class action mechanism is appropriately used to "disgorge unjust enrichment" gained through improper or illegal means). The Court concludes that the key factors that will be assessed in connection with this equitable remedy are the same issues focused on Defendants' conduct identified above. Accordingly, the Court concludes that common questions predominate in the unjust enrichment claims of the settlement class.

### B. Class Treatment is a Superior Method for the Adjudication of the Consumer Claims Asserted in the Complaint.

27. In addition to the predominance requirement, Rule 23(b)(3) also requires that the Court determine that the class action mechanism is superior to other available methods for fair and efficient adjudication of the matter at issue. In *Amchem*, the Supreme Court stated that the requirement of superiority in Rule 23(b)(3), like that of predominance, ensures that resolution by class-wide litigation will "achieve economies of time, effort, and expense, and promote . . . uniformity of decisions as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Id.* at 615. As noted above, courts need not address manageability issues that arise in the litigation of a class action when the class certification is proposed in a settlement context.

28. This case satisfies the "superiority" requirement. Settling this case as a class action will achieve economies for both the litigants and the Court, avoiding hundreds of thousands of individual adjudications that would overwhelm the court system. Moreover, if

certification is denied, these numerous individual lawsuits "would be needlessly duplicative, expensive, and time-consuming, especially in light of the predominance of common questions." *In re Plastic Cutlery Antitrust Litigation*, 1998 WL 135703, *9 (E.D. Pa. 1998); *see also In Re Cardizem*, 200 F.R.D. 326 (E.D. Mich. 2001) (certification will achieve economy for litigants and courts); *In re Lorazepam*, 202 F.R.D. 12, 30-31 (D.D.C. 2001) (absent certification, individual lawsuits would unnecessarily waste judicial resources). Requiring individual Class Members to file their own lawsuits under the facts and allegations in this case would result in unnecessary duplication, with parties, witnesses and courts being required to litigate the very same legal and factual issues time and time again.

29. The Court concludes that all certification and appointment of class counsel requirements of Rule 23 have been met with respect to the Settlement Class.

WHEREFORE, Plaintiffs' motion for certification of a Settlement Class is granted in all respects. A Settlement Class is certified as set forth in Plaintiffs' Motion for Certification of a Settlement Class and Supporting Memorandum of Law. Plaintiffs Thomas M. Heaney, Terrance Hayes, Stacey Williams, Richard Sharp, Ashley Hawkes, and Susan Dwyer are appointed the Settlement Class Representatives. Plaintiffs' Co-Lead Counsel, Don Barrett, Barrett Law Office, P.A., and Ben Barnow, Barnow and Associates, P.C., are appointed Co-Lead Settlement Class Counsel.

SO ORDERED on this 19th day of January 2006.

_____
U.S. District Judge Ivan L.R. Lemelle